*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRENDEL'S SEPTIC TANK SERVICE, LLC,

        Plaintiff-Appellant,

v

TERRY VICKERS and ON TIME PORTABLES, LLC,

        Defendants-Appellees.

UNPUBLISHED
February 21, 2025
9:23 AM

No. 369492
Oakland Circuit Court
LC No. 2022-196108-CB

Before: YATES, P.J., and LETICA and N. P. HOOD, JJ.

PER CURIAM.

Plaintiff, Brendel's Septic Tank Service, LLC (plaintiff), appeals as of right from the opinion and order denying its motion for reconsideration of the opinion and order granting summary disposition in favor of defendants, Terri Vickers (Vickers) and On Time Portables, LLC (OTP). We reverse and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

In September 2022, plaintiff filed a complaint, contending that it was a limited liability corporation that provided sanitation and septic services for construction, commercial and residential, cities and parks, and other venues. Vickers allegedly served as plaintiff's office manager from 2012 through 2022. In this role, Vickers purportedly had access to plaintiff's confidential information, including customer lists and contacts, billing information, products, services, vendors, and business information. This confidential information constituted "trade secrets" under Michigan's Uniform Trade Secrets Act, MCL 445.1902. Plaintiff asserted that Vickers knew that she was not supposed to use, divulge, or reveal plaintiff's confidential information or use it for Vickers's own benefit. Despite this knowledge, in January 2021, Vickers allegedly formed OTP to directly compete with plaintiff and offer the same services. On April 29, 2022, Vickers quit her job with plaintiff, claiming she took a dispatch job with waste management in order to work from home. In reality, plaintiff claimed that Vickers, through OTP, began to solicit plaintiff's customers and purchase equipment from plaintiff's suppliers to directly compete with plaintiff.

Plaintiff learned of defendants' solicitation of its customers and sent a cease-and-desist letter to Vickers on May 17, 2022, but the solicitation continued. Plaintiff alleged that it continued to suffer loss of clients, goodwill, and other injuries. Plaintiff raised claims of: (1) violation of Michigan's Uniform Trade Secrets Act, (MUTSA) (2) breach of fiduciary duty (Vickers), and (3) tortious interference with "business relations, contracts and/or business expectancies."[1]

In October 2022, in lieu of filing an answer to the complaint,[2] defendants moved for summary disposition under MCR 2.116(C)(8) and (10). Defendants claimed that plaintiff was a large septic service company operated by an attorney that was trying to bully the competition out of business. Defendants alleged that they were a small porta-potty company, OTP, operated by plaintiff's former employee, Vickers. In fact, plaintiff previously threatened litigation against another former employee that started a competitive business. Although plaintiff challenged the competition by defendants, it failed to provide a nondisclosure, nonsolicitation agreement with defendants. If plaintiff succeeded in its litigation, it would contradict long-standing precedent encouraging free market concepts and a competitive marketplace. The items listed in the complaint were not misappropriated or trade secrets. And, according to defendants, Vickers did not owe a fiduciary duty to plaintiff because she was a low-level employee, not one of plaintiff's officers, directors, or members. Nor did Vickers tortiously interfere with plaintiff's economic relationships. Defendants claimed that summary disposition of plaintiff's complaint should be granted in their favor because there were no trade secrets or misappropriation by defendants, because Vickers did not owe a fiduciary duty in her role as customer service representative and truck driver, and because no tortious interference occurred.

The trial court did not schedule the dispositive motion for hearing. Instead on October 26, 2022, the trial court ordered the parties to appear for a case management conference. And, on November 17, 2022, the trial court entered an order staying the litigation pending alternative dispute resolution (ADR) to occur by March 31, 2023. In April 2023, the trial court lifted the stay and, after conducting a case conference, it issued a scheduling order on April 21, 2023. On April 25, 2023, the trial court issued a summary disposition scheduling order.

On May 31, 2023, plaintiff filed its response in opposition to defendants' motion for summary disposition. Plaintiff alleged that defendants' dispositive motion mischaracterized the facts as evidenced by Vickers's self-serving and one-sided affidavit. Therefore, the affidavit should be disregarded, particularly when discovery was ongoing, and plaintiff's facts and evidence contradicted the affidavit. Plaintiff contended that Vickers began her employment in 2012, when plaintiff was owned by Jay Brendel. In 2019, Susan Armstrong (Armstrong) purchased plaintiff and retained Vickers in her role as office manager. Armstrong's affidavit alleged that Vickers took action while employed with plaintiff to establish her competing business. Specifically, Armstrong

---

[1] Plaintiff also moved for a preliminary injunction. And later, plaintiff sought to add a party and amend the complaint. There is no indication that the trial court ruled on the preliminary injunction motion. Plaintiff did not appeal the amendment rulings.

[2] A show cause was issued for plaintiff's failure to seek entry of a default. The trial court later vacated the show cause in light of defendant's filing of the motion for summary disposition in lieu of filing an answer to the complaint.

learned that: (1) Vickers used a thumb drive to download plaintiff's computer files without authorization; (2) Vickers stored customer information in her personal cell phone; (3) Vickers used the corporate credit card without consent; (4) Vickers allowed company vehicles to be used on the weekends for personal use; and (5) Vickers took orders while employed with plaintiff, but cancelled those orders and defendants assumed this customer business after her departure. It was further asserted that Vickers conspired with her live-in boyfriend and the owner of a trucking/construction business, Anthony Zarb (Zarb), to interfere with plaintiff's business after their attempt to purchase plaintiff failed in December 2018. Plaintiff claimed that its pricing was not generally known or posted on its website; instead, salespeople in the field generated business.

Plaintiff alleged there were genuine issues of material fact and summary disposition was premature before the completion of discovery. And, Armstrong had submitted her own affidavit to demonstrate that Vickers's affidavit was self-serving and factually "just plain wrong." It was asserted that additional discovery and depositions were necessary to vet and negate Vickers's factual claims. For example, Vickers's role with plaintiff was disputed with Vickers claiming she was merely a low-level employee while Armstrong averred that Vickers was the office manager with access to confidential customer information and contracts. Plaintiff also addressed the elements of its claims, contending that there were genuine issues of material fact precluding dismissal.

On June 13, 2023, defendants filed a reply brief. Defendants claimed that Armstrong's affidavit designed to create a factual issue was contrary to the court rules. They referenced specific paragraphs of Armstrong's affidavit, asserting that they contained hearsay and lacked specifics. Defendants further alleged that plaintiff's pricing could be learned by calling it for a quote. Because plaintiff failed to create a genuine issue of material fact with admissible evidence pertaining to its claims, summary disposition was proper. With their reply brief, defendants submitted additional affidavits to dispute the contention that they solicited plaintiff's customers.

On September 25, 2023 (over three months after the submission of the reply brief), the trial court waived oral argument on the motion and issued an opinion and order granting defendants' motion for summary disposition. The trial court principally concluded that plaintiff failed to present admissible evidence to support the MUTSA, breach of fiduciary duty, and tortious interference claims and failed to demonstrate that summary disposition was premature prior to the close of discovery.

On October 16, 2023, plaintiff moved for reconsideration of the opinion and order granting summary disposition in defendants' favor, alleging that Vickers "maliciously and intentionally designed and implemented a plan to convert [plaintiff's] confidential customer contact information and special pricing to specifically undercut the Plaintiff and solicit long-term customers." Plaintiff claimed that Vickers used her knowledge and access to plaintiff's confidential, password-protected database and then deleted Vickers's database to prevent discovery of her actions. That action did not fall within fair competition, but rather, was tortious conduct that substantially damaged plaintiff. And, defendants' reply brief attached affidavits from multiple witnesses that were not submitted with the dispositive motion. Consequently, plaintiff was unable to address those affidavits or take discovery from those witnesses. Additionally, when the trial court granted the dispositive motion, it held in part that plaintiff lacked proofs to support its claims. But, defendants moved for summary disposition under MCR 2.116(C)(10) before discovery was complete.

Plaintiff had subpoenas that needed to be answered and planned to depose material witnesses. These depositions would address the hearsay and other evidentiary concerns raised by the trial court. Plaintiff could not compel witnesses to sign affidavits, but could compel witnesses to appear for depositions. Plaintiff sought the opportunity to complete the depositions "before a ruling under MCR 2.116(C)(10) is made." To support reconsideration, Armstrong filed a second affidavit as well as affidavits from plaintiff's employees, asserting that Vickers improperly contacted plaintiff's customers on her personal cell phone and removed information from plaintiff's computers. Plaintiff alleged that it created special pricing and contacts for 75% of its customers and defendants utilized this information to undercut its pricing. Plaintiff again challenged the trial court's decision to rule on the dispositive motion prior to the completion of discovery. Plaintiff alleged that it met the standard for the trial court to grant reconsideration, showing a palpable error by which the trial court had been misled, specifically Vickers's misleading affidavit.

On November 9, 2023, defendants filed their response to plaintiff's reconsideration motion in accord with the trial court's order. Defendants objected to plaintiff's submission of additional documentary evidence, contending that it was available before the trial court's original decision. Defendants asserted that plaintiff's employee affidavits were "in large part" "untrue, contradictory, and frankly suspicious." They claimed that the trial court correctly determined that plaintiff abandoned its argument that summary disposition was premature by failing to explain what discovery was outstanding and how its production would change the material facts. Moreover, plaintiff's newly submitted affidavits were "wrong," and their legitimacy should be questioned because of the nature of the signatures and the notary designations. Further, Armstrong's affidavits were disingenuous and contained inadmissible hearsay. Therefore, defendants requested that plaintiff's motion for reconsideration be denied because "an unmistakable error" by the trial court did not occur when it dismissed the case.

On January 4, 2024, the trial court issued an opinion and order denying plaintiff's motion for reconsideration. The trial court noted that it previously rejected plaintiff's argument that summary disposition was premature in its original opinion. And, on reconsideration, the trial court faulted plaintiff for failing to provide the additional affidavits and information in response to the original motion for summary disposition. From this decision, plaintiff appeals.

## II. STANDARD OF REVIEW[3]

"A trial court's decision on a motion for reconsideration is reviewed for an abuse of discretion." *Tripp v Baker*, 346 Mich App 257, 274; 12 NW3d 45 (2023). A trial court abuses its discretion when it selects an outcome outside the range of reasonable and principled outcomes. *Id*.

---

[3] We note that defendants contend that plaintiff challenges the trial court's underlying summary disposition decision without raising it in the statement of questions presented. Indeed, when a party fails to include an argument in the statement of questions presented, it is not properly raised for appellate review. *Mich Adventure, Inc v Dalton Twp*, 290 Mich App 328, 337 n 3; 802 NW2d 353 (2010); see also MCR 7.212(C)(5) (identifying the contents of a brief to include "[a] statement

## III. ANALYSIS

Plaintiff contends that the trial court abused its discretion in failing to reconsider "its premature and erroneous decision" to grant summary disposition of plaintiff's complaint before the close of discovery and in denying plaintiff's motion for reconsideration. We agree.

In its opinion and order granting defendants' motion for summary disposition, the trial court determined that plaintiff failed to present admissible evidence to support its MUTSA, breach of fiduciary duty, and tortious interference claims.

In support of defendants' motion for summary disposition, Vickers submitted an affidavit wherein, she attested that she began working for plaintiff in 2011, as a customer service representative, with her duties consisting of scheduling appointments, billing customers, and fielding customer phone calls and complaints. After Armstrong purchased plaintiff in 2019, Vickers continued her employment as a customer service representative. Vickers denied having a management role in the company. She averred that she was unhappy with her job and formed OTP in 2021, but did not compete with plaintiff during her employment. Instead, Vickers alleged that she did not obtain her first job until after she resigned from plaintiff. The affidavit also provided:

> 15. When I left [plaintiff's], I did not take any of its property. [Plaintiff] never had an actual customer list that I was aware of, and I certainly didn't take any documentation of theirs with me.

> 16. I have never gone to any of [plaintiff's] customers at any time and asked or suggest that they leave [plaintiff] for my company.

> 17. I am not aware of any company that [plaintiff] had that broke a contract with them [sic] to become a customer of mine.

Vickers also denied committing defamation to obtain a customer, denied learning that the information she accessed while working for plaintiff was confidential, denied signing any confidentiality or nonsolicitation agreement, and denied being privy to any trade secrets because prices were listed on the company website or accessible by phone.

In response, Armstrong submitted an affidavit premised on "personal knowledge, information, and belief[.]" Armstrong averred that Vickers had access to and updated all customer

---

of questions involved, stating concisely and without repetition the questions involved in the appeal.").

After review of the statement of questions involved, we conclude that it necessarily includes the underlying summary disposition decision. The statement of the first issue submits that the trial court abused its discretion in failing to reconsider "its premature and erroneous [summary disposition] decision to dismiss plaintiff's complaint prior to the close of discovery, and prior to discovery on disputed issues having been completed[.]" In our view, analysis of the reconsideration decision, as stated by plaintiff, necessarily involves consideration of the underlying summary disposition ruling.

lists, pricing, strategies, profit margins, and products and access to all computer systems through logins and passwords. Armstrong stated the following:

> 4. I have spoken with several of Plaintiff's former customers and learned that Defendants have been utilizing Plaintiff's contractual information to undercut Plaintiff's pricing with its customers to cause such customers to terminate their contracts and business relationships with Plaintiff and do business with Defendants.

> 5. I learned that Defendant Vickers, during the last months of her employment with Plaintiff, retrieved a thumb drive storage device from her vehicle when I was out of the office, inserted a thumb drive into Plaintiff's computer system at the office and believed to download files from the system. I am currently conducting a forensic review of the computer to ascertain specifically what files and information were downloaded by Vickers.

In her affidavit, Armstrong further stated that after Vickers's departure from plaintiff's employment in 2022, Armstrong learned that Vickers and Zarb attempted to purchase plaintiff. At the time of their attempt, Armstrong had negotiated the sale with the prior owner. Armstrong alleged that Vickers and Zarb conspired to learn all aspects of plaintiff's business and "began stealing trade secret and customer information and storing customer information in Defendant Vickers['s] cell phone, setting up [a] home office to utilize Plaintiff's trade secrets and information and to siphon customers in an illegal and tortious manner." Armstrong averred that, in 2022, Vickers called a current employee of plaintiff's and advised that she took Camp Dearborn, a customer of plaintiff's away and planned to take away plaintiff's remaining customers. Armstrong further opined that the records produced by Vickers thus far demonstrated that she was deliberately undercutting and underpricing services to plaintiff's contracted customers. Armstrong characterized Vickers as the "officer manager," a trusted advisor, and her surrogate.

Defendants then filed a reply brief, asserting that Armstrong's affidavit failed to comply with MCR 2.119(B)(1) because it contained inadmissible hearsay, noting that Armstrong stated that she *spoke* with employees or *learned* from employees. Defendants criticized Armstrong for having eight months to discuss attestations with her employees, but failing to place specifics in her affidavit.

We note that defendants simply concluded that Armstrong's affidavit was premised on hearsay information without providing any analysis. " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidenced to prove the truth of the matter asserted." MRE 801(c). "Hearsay is not admissible unless a specific exception applies." *Campbell v Dep't of Human Servs*, 286 Mich App 230, 245; 780 NW2d 586 (2009), citing MRE 802. When such evidence is not offered for the truth of the matter asserted, it is not hearsay. *Dep't of Environmental Quality v Morley*, 314 Mich App 306, 314; 885 NW2d 892 (2015).

In order to properly consider evidence when determining the propriety of summary disposition, it must be substantively admissible, but need not be admissible in form. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2019). Stated otherwise, the trial court may consider evidence that would be admissible if a proper

foundation is established. *Id*. "Although the trial court may only consider substantively admissible evidence, a party does not have to lay the foundation for the admission for evidence submitted in support of or in opposition to a motion for summary disposition under MCR 2.116(C)(10) as long as there [is] a plausible basis for the admission of the evidence." *Airgas Specialty Prods v Mich Occupational Safety & Health Admin*, 338 Mich App 482, 516-517; 980 NW2d 530 (2021) (quotation marks and citation omitted, alteration in original).

We conclude that plaintiff did not present hearsay statements in opposition to the motion for summary disposition. Indeed, although the trial court determined that "inadmissible hearsay" was presented, it merely concluded it was hearsay in light of the term "spoke," and the trial court did not identify the hearsay statements. In fact, Armstrong's affidavit did not identify the specific individuals and the statements that they made to her. Rather, Armstrong indicated that she spoke to and learned information that caused her to conduct further investigation, speak to other individuals and entities, and commence a forensic evaluation of plaintiff's "RouteOptix" computer program to determine whether it was true that Vickers improperly used a thumb drive to steal confidential information. This affidavit was sufficient to create a factual issue precluding summary disposition at this stage of the proceeding, particularly when the parties had not engaged in discovery depositions.

Indeed, there is no indication that the parties engaged in substantial discovery. Plaintiff filed its complaint on September 13, 2022. In response to the complaint, defendants did not submit an answer, but filed a motion for summary disposition on October 13, 2022. Although plaintiff filed a motion for a preliminary injunction with the complaint, there is no indication that the trial court ruled on its request. Instead, the trial court scheduled a case conference and then ordered the parties to engage in ADR. That is, on November 17, 2022, the trial court issued a stay of the case pending ADR, but noted that defendants agreed to timely answer *pending* discovery requests. The trial court ordered the parties to engage in ADR before March 31, 2023. And, the trial court scheduled a case conference for April 21, 2023. On April 21, 2023, the trial court issued a scheduling order providing that fact discovery would close on October 31, 2023. On April 25, 2023, the trial court issued a scheduling order for defendants' motion for summary disposition that required plaintiff file a response by May 31, 2023. Although defendants originally filed their motion for summary disposition on October 13, 2022, they did not update their motion or file additional documentary evidence in support. Defendants filed their reply brief on June 13, 2023, with additional documentary evidence, including affidavits. But, the trial court waived oral argument and did not issue a decision until September 25, 2023. The parties did not engage in discovery between November 2022 and April 2023, when the case was stayed. And, arguably, the parties were not inclined to engage in costly discovery, such as depositions, between the time of submission of the motion for summary disposition in June 2023, and the court's ultimate decision in late September 2023. Further, if Vickers was deposed and contradicted the assertions in her affidavit or if a customer did so, plaintiff would have sought to file a supplemental brief before the trial court issued its written opinion granting the dispositive motion.

When deciding a motion for summary disposition, the trial court may not weigh the evidence or make credibility determinations. *Franks v Franks*, 330 Mich App 69, 85; 944 NW2d 388 (2019). That is, the trial court is not to decide the credibility of the various witnesses. *White v Taylor Distrib Co, Inc*, 482 Mich 136, 139; 753 NW2d 591 (2008). "Summary disposition is suspect when motive or intent are at issue or where the credibility of a witness is crucial." *Foreman*

*v Foreman*, 266 Mich App 132, 135; 701 NW2d 167 (2005). Thus, when the truth of a material factual assertion made by a moving party is contingent upon credibility, summary disposition should not be granted. *Id*. at 136. The trial court may not make factual findings, and if the evidence conflicts, summary disposition is improper. *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019). Indeed, courts must be liberal in finding a factual dispute that withstands summary disposition. *Id*. Inconsistencies in statements given by witnesses cannot be ignored. *White*, 482 Mich at 142. And, application of disputed facts to the law present proper questions for the jury or trier of fact. *Id*. at 143. Here, Vickers's statements regarding her actions while employed by plaintiff and after she started OTP presented a credibility determination, particularly when plaintiff produced phone records evidencing Vickers's personal cell phone call to one of plaintiff's customers when employed by plaintiff.

> As already noted, a motion for reconsideration is reviewed for an abuse of discretion.
>
> Under MCR 2.119(F), a trial court has discretion to grant rehearing or reconsideration of a decision on a motion. "The rule allows the court considerable discretion in granting reconsideration to correct mistakes, to preserve judicial economy, and to minimize costs to the parties." The trial court may even give a party a second chance on a previously decided motion. [*Al-Maliki v LaGrant*, 286 Mich App 483, 486; 781 NW2d 853 (2009) (citations omitted).]

"The purpose of MCR 2.119(F) is to allow a trial court to immediately correct any obvious mistakes it may have made in ruling on a motion . . . ." *Bers v Bers*, 167 Mich App 457, 462; 411 NW2d 732 (1987) (citation omitted). The court rule is not designed to preclude an exercise of discretion, but to provide guidance. *Id*. at 463 (citation omitted).

Generally, summary disposition is premature when discovery on a disputed issue is incomplete. *Walrath v Witzenmann USA LLC*, 320 Mich App 125, 144; 904 NW2d 875 (2017). But, an open period of discovery does not necessarily reflect that the trial court's decision to grant summary disposition was untimely or inappropriate. *Id*. (citation omitted). The issue is whether additional discovery will stand a fair chance of uncovering factual support for the opposing party's position. *Id*. The trial court does not abuse its discretion by denying a motion for reconsideration premised on facts or legal theory that could have been pleaded or argued before the trial court's original order. *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 630; 750 NW2d 228 (2008); *Charbeneau v Wayne Co Gen Hosp*, 158 Mich App 730, 733; 405 NW2d 151 (1987). The trial court also properly denies a motion for reconsideration if the evidence could have been produced, with reasonable diligence, at the time of the court's initial ruling. *C D Barnes Assoc v Star Heaven LLC*, 300 Mich App 389, 425; 834 NW2d 878 (2013).

As an initial matter, we agree with plaintiff that the trial court erroneously granted summary disposition prematurely prior to the close of discovery and when genuine issues of material fact were demonstrated. Specifically, although defendants claimed that plaintiff relied on hearsay in the Armstrong affidavit, a review of the affidavit reveals that it did not expressly delineate hearsay statements made by Armstrong's employees. Rather, Armstrong noted that she spoke to individuals and was given information or learned information. This information caused Armstrong to further investigate Vickers's actions. Technically, Armstrong did not quote statements made by others and rely on those out-of-court statements for the truth of the matter asserted. In fact,

Armstrong acknowledged that she learned that Vickers used a thumb drive to remove information from plaintiff's computer system and was in the process of having an expert forensically review to determine what occurred. Under the circumstances, the trial court erred in concluding that plaintiff's complaint should be dismissed because plaintiff submitted inadmissible hearsay in opposition to defendants' motion for summary disposition. Defendants and the trial court simply conclude that hearsay was at issue because of the term "spoke" in Armstrong's affidavit. But, because the statements were not identified, the trial court never expressly analyzed them, including determining whether they were offered for the truth of the matter asserted. MRE 801(c).

Moreover, as noted, in order to properly consider evidence when determining the propriety of summary disposition, the evidence must be substantively admissible but need not be admissible in form. *Barnard Mfg Co, Inc*, 285 Mich App at 373. Stated otherwise, the trial court may consider evidence that would be admissible if a proper foundation is established. *Id*. "Although the trial court may only consider substantively admissible evidence, a party does not have to lay the foundation for the admission for evidence submitted in support of or in opposition to a motion for summary disposition under MCR 2.116(C)(10) as long as there [is] a plausible basis for the admission of the evidence." *Airgas Specialty Prods*, 338 Mich App at 516-517. At trial, plaintiff would not be able to admit or rely on the affidavit, but would be required to call the employees, customers, or forensic analysts to testify premised on their personal knowledge.

Additionally, the trial court abused its discretion in concluding that the decision to grant summary disposition was not premature. That is, in the opinion and order granting defendants' motion for summary disposition, the trial court declined to conclude that its decision was premature, stating that plaintiff's insufficient briefing resulted in the abandonment of the issue.

But, our review of plaintiff's argument reveals that plaintiff devoted three paragraphs to the impropriety of summary disposition prior to the close of discovery, citing published caselaw and applicable court rules. Plaintiff also noted that summary disposition was premature when the parties could not even agree on the title and role that Vickers held during plaintiff's employ.

The trial court also abused its discretion in faulting plaintiff for failing to engage in discovery earlier. The trial court's discovery order merely required that fact discovery be completed by October 31, 2023. Its order did not impose qualifications addressing the timing of subpoenas or the completion date for depositions. If the parties waited until the month of October 2023 to engage in discovery, even if unwise, the trial court's order did not prohibit such action. The trial court's questioning of what type of discovery and when it should have occurred was improper when the trial court failed to include specific time periods and events in its scheduling order. Rather, the issue was whether further discovery would result in a fair chance of developing a factual issue that precluded summary disposition, not the timing of events. As noted, summary disposition is generally premature when discovery on a disputed issue is incomplete, and additional discovery will stand a fair chance of uncovering factual support for the opposing party's position. *Walrath*, 320 Mich App at 144.

Lastly, it is not an abuse of discretion to deny a motion for reconsideration premised on facts and legal theory that could have been argued before the original motion. See *Woods*, 277 Mich App at 630; *Charbeneau*, 158 Mich App at 733. As noted, we conclude that plaintiff's presentation of Armstrong's affidavit was sufficient to create a factual issue to deny the dispositive

motion in the first place. Second, in the manner the trial court handled the case, it was not possible for plaintiff to present additional proofs addressing defendants' reply brief prior to the original motion hearing. Specifically, once the case was filed, the trial court ordered it stayed and to proceed to ADR. After staying the case from November 2022 to April 2023, the trial court lifted the stay and ordered plaintiff to file a response to the dispositive motion. In the reply brief, defendants contested the viability of Armstrong's affidavit in creating a factual issue and defendants filed additional affidavits denying contacts with plaintiff's customers. Because the trial court waived oral argument, plaintiff did not have the opportunity to challenge defendants' assessment of Armstrong's affidavit and to refute the additional affidavits filed. In light of the manner in which the trial court handled this case, the dismissal of plaintiff's case premised on the failure to file additional affidavits in response to the original motion for summary disposition constitutes an abuse of discretion.

Summary disposition is appropriate under MCR 2.116(C)(10) when, except as to damages, there is no genuine issue of material fact. *Mr Sunshine v Delta College Bd of Trustees*, 343 Mich App 597, 612; 997 NW2d 755 (2022) (citation omitted). A fact is significant when it is material or essential to the matter at hand. *Id*. "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). In this case, the trial court granted summary disposition premised on defendants' conclusions regarding inadmissible hearsay and abandonment. But, defendants failed to analyze whether a foundation for admission of the evidence rendered the Armstrong affidavit sufficient and their abandonment argument ignored the paragraphs that plaintiff devoted to demonstrating why summary disposition was premature before discovery closed. The trial court's ruling denying reconsideration constituted an abuse of discretion.[4]

Reversed and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Anica Letica
/s/ Noah P. Hood

---

[4] Because the application of disputed facts to the law present proper questions for the jury or trier of fact, we conclude the parties' competing affidavits created a factual issue such that further examination of the elements of plaintiff's claims is unnecessary at this time. *White*, 482 Mich at 143.